1  ARNOLD & PORTER LLP
   MAURICE A. LEITER (State Bar No. 123732)
2  maury.leiter@aporter.com
   777 South Figueroa Street, 44th Floor
3  Los Angeles, California 90017-5844
   Telephone: +1 213.243.4000
4  Facsimile: +1 213.243.4199

5  ARNOLD & PORTER LLP
   MICHAEL J. BAKER (State Bar No. 56492)
6  michael.baker@aporter.com
   SHARON D. MAYO (State Bar No. 150469)
7  sharon.mayo@aporter.com
   JEREMY M. MCLAUGHLIN (State Bar No. 258644)
8  jeremy.mclaughlin@aporter.com
   Three Embarcadero Center, 7th Floor
9  San Francisco, California 94111-4024
   Telephone: +1 415.471.3100
10 Facsimile: +1 415.471.3400

11 *Attorneys for Defendant Bristol-Myers Squibb Company*

12

13                    UNITED STATES DISTRICT COURT
14                    NORTHERN DISTRICT OF CALIFORNIA

15

16                      C    13    1487

17 DALE GUINN *et al.*,                    )   Case No. _____
                                           )
18         Plaintiffs,                     )
                                           )
19    v.                                   )   DEFENDANT BRISTOL-MYERS
                                           )   SQUIBB COMPANY'S NOTICE OF
20 BRISTOL-MYERS SQUIBB COMPANY,           )   REMOVAL OF ACTION PURSUANT TO
   MCKESSON CORPORATION, and               )   28 U.S.C. §§ 1332, 1441, 1446
21 DOES 1 to 100,                          )
                                           )   DEMAND FOR JURY TRIAL
22         Defendants.                     )
                                           )
23                                         )
                                           )
24                                         )
                                           )
25                                         )

26

27

28

## I.   INTRODUCTION AND FACTUAL BACKGROUND

1.      Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and any other applicable laws, Defendant Bristol-Myers Squibb Company ("BMS")[1] hereby gives notice of removal of the above action, entitled *Dale Guinn et al. v. Bristol-Myers Squibb Company et al.*, bearing civil action No. CGC-13-530114, from the Superior Court of the State of California, County of San Francisco, to the United States District Court for the Northern District of California.  The *Guinn* action is substantively identical to nineteen other cases pending in this District involving the prescription medication Plavix®, ten of which to date have been related and are pending before Judge Edward M. Chen.  In addition, the Judicial Panel on Multidistrict Litigation ("JPML") has conditionally transferred seventeen pending cases to a newly established Plavix® MDL in the District of New Jersey.  To date, stays of further proceedings pending transfer to the MDL have been entered in four of these cases, and motions to stay are pending in another thirteen.[2]  Defendant BMS intends to file a tag-along notice for this case with the JPML and to file a motion to stay this case pending transfer to the MDL.

---

[1]      Defendant Bristol-Myers Squibb Company was incorrectly designated "Bristol-Meyers Squibb Company" in the Complaint.

[2]      The four cases that are stayed are: *James T. Aiken et al. v. Bristol-Myers Squibb Co. et al.*, No. 3:12-cv-5208 RS (N.D. Cal.); *John Belinda et al. v. Bristol-Myers Squibb Co. et al.*, No. 3:12-cv-5941 YGR (N.D. Cal.); *Ravy Vanny et al. v. Bristol-Myers Squibb Co. et al.*, No. 3:12-cv-5752 SI (N.D. Cal.); and *Karima Norrise v. Kaiser Found. Hosps. & Health Plan et al.*, No. 3:12-cv-6456 SI (N.D. Cal.) (case stayed pursuant to parties' joint stipulation).  The other thirteen cases with motions to stay pending in this District are: *Sandra L. Kinney et al. v. Bristol-Myers Squibb Co. et al.*, No. 3;12-cv-4477 EMC (N.D. Cal.); *Bennie Burman et al. v. Bristol-Myers Squibb Co. et al.*, No. 3;12-cv-4478 EMC (N.D. Cal.); *Wauneta Raynor et al. v. Bristol-Myers Squibb Co. et al.*, No. 3;12-cv-4615 EMC (N.D. Cal.); *George Robinson et al. v. Bristol-Myers Squibb Co.*, No. 3:12-cv-4616 EMC (N.D. Cal.); *Iris Meeks et al. v. Bristol-Myers Squibb Co. et al.*, No. 3:12-cv-4617 EMC (N.D. Cal.); *Jack Olmstead et al. v. Bristol-Myers Squibb Co. et al.*, No. 3:12-cv-4619 EMC (N.D. Cal.); *George Dillard et al. v. Bristol-Myers Squibb Co. et al.*, No. 3:12-cv-4633 EMC (N.D. Cal.); *Virgil Walden Jr. et al. v. Bristol-Myers Squibb Co. et al.*, No. 3:12-cv-4641 EMC (N.D. Cal.); *Damon Kaluza Sr. et al. v. Bristol-Myers Squibb Co. et al.*, No. 3:12-cv-4642 EMC (N.D. Cal.); *Vertus Corkerin et al. v. Bristol-Myers Squibb Co. et al.*, No. 3:12-cv-4803 EMC (N.D. Cal.); *Michael A. Arnold et al. v. Bristol-Myers Squibb Co. et al.*, No. 3:12-cv-6426 TEH (N.D. Cal.); *Irving K. Arenberg et al. v. Bristol-Myers Squibb Co. et al.*, No. 3:12-cv-6207 SBA (N.D. Cal.); and *Dorothy G. Gibson et al. v. Bristol-Myers Squibb Co. et al.*, No. 3:13-cv-01416 SBA (N.D. Cal.).

- 1 -

2.      On March 29, 2013, Plaintiffs filed this Complaint against Defendants BMS, McKesson Corporation ("McKesson"), and Does 1-100 in the Superior Court of the State of California, County of San Francisco. Defendant BMS has received a copy of, but has not yet been served with, the Complaint. Pursuant to 28 U.S.C. § 1446(a), a true and legible copy of the Complaint is attached as Exhibit A.

3.      The *Guinn* Complaint includes 51 Plaintiffs from 19 states across the country who allegedly have sustained injuries as a result of ingesting Plavix® -- a prescription antiplatelet medication manufactured by Defendant BMS. Except for some spouses joined as Plaintiffs, the Plaintiffs seem to be unrelated. Plaintiffs do not allege that they received Plavix® from the same prescribing physician. They do not allege a common condition for which they were prescribed Plavix®. They do not allege similarities in length of exposure to Plavix®. They do not all allege the same type of Plavix®-related injuries.

4.      As further set forth below, jurisdiction over this case is proper based on diversity of citizenship. Complete diversity exists between all properly joined Plaintiffs and Defendants. Defendant McKesson Corporation has been fraudulently joined, and therefore its status as a forum defendant does not prevent removal of this action. *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332 (a) of this title may not be removed if any of the parties in interest *properly joined* and served as defendants is a citizen of the State in which such action is brought.") (emphasis added). Similarly, the citizenship of the unnamed Doe Defendants is ignored for removal purposes. The citizenship of the three non-diverse Plaintiffs -- thrown in for the sole purpose of thwarting removal -- should be ignored under the "egregious misjoinder" doctrine. The Court should sever the claims of the non-diverse Plaintiffs and retain jurisdiction over the diverse Plaintiffs' claims.

## II.     FEDERAL JURISDICTION

### A.     DIVERSITY JURISDICTION

5.      Defendant BMS removes this action on the basis of complete diversity of citizenship pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. There is complete diversity between all properly joined Plaintiffs and Defendants.

6.      Defendant BMS is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in New York.  Defendant BMS is, therefore, a citizen of the States of Delaware and of New York.

7.      Defendant McKesson Corporation is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in California.  Ex. A, ¶ 71. McKesson is fraudulently joined, and therefore, removal of this action is proper even under 28 U.S.C. § 1441(b)(2).

8.      The citizenship of parties sued under fictitious names (Does 1 - 100) is disregarded for purposes of removing on the basis of diversity jurisdiction.  28 U.S.C. § 1441(a); *Wood v. Davis*, 59 U.S. 467, 469 (1855) ("It has been repeatedly decided by this court, that . . . nominal parties . . . cannot oust the federal courts of jurisdiction . . . ."); *Roth v. Davis*, 231 F.2d 681, 683 (9th Cir. 1956) ("In determining the question whether diversity of citizenship requisite to jurisdiction exists . . . the presence of a nominal party with no real interest in the controversy will be disregarded.") (quotations and citation omitted); *Strotek Corp. v. Air Transp. Ass'n. of Am.*, 300 F.3d 1129, 1132 (9th Cir. 2002) ("Nor may the presence of a sham or nominal party defeat removal on diversity grounds.") (citations omitted).

9.      Plaintiffs are 51 individuals from Arkansas, Colorado, Connecticut, Georgia, Hawaii, Illinois, Indiana, Michigan, Minnesota, Mississippi, New Mexico, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Utah, Virginia, and Wisconsin. *See infra* Section III.

            **i.      Fraudulent Joinder of Defendant McKesson Corporation**

10.     Defendant McKesson Corporation is not a proper party to this case, and its status as an in-state forum defendant should therefore be disregarded for purposes of removal.  28 U.S.C. § 1441(b)(2) (diversity jurisdiction is proper "if none of the parties in interest *properly joined* and served as Defendants is a citizen of the State in which such action is brought") (emphasis added).

11.     A defendant is fraudulently joined and its presence in the lawsuit is ignored for purposes of determining diversity where no viable cause of action has been stated against it.  *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (a defendant is fraudulently joined "if the plaintiff fails to state a cause of action against the resident defendant, and the failure is

- 3 -

obvious according to the settled rules of the state") (citing *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (same).

12.     Defendant McKesson is fraudulently joined because: (1) McKesson, as a mere distributor, is not liable under any cause of action alleged in the Complaint, (2) Plaintiffs make no *plausible allegations* that McKesson actually distributed the Plavix® to these Plaintiffs, and have not otherwise made allegations of ***any*** tortious conduct on the part of McKesson, and (3) there is no strict liability claim against a *pharmaceutical* distributor who supplies but does not manufacture or design the drug.

13.     ***First***, the claims against McKesson -- which are essentially all based on alleged failure-to-warn -- are preempted under the Supreme Court's decision in *Pliva, Inc. v. Mensing*, 131 S. Ct. 2567 (2011). *See, e.g.*, Ex. A, ¶ 101 (in design defect cause of action, alleging that Plavix® was "defective due to inadequate warning or instruction"); *id.* ¶ 120 (in negligence cause of action, alleging that Defendants were "negligent in the . . . warning . . . of Plavix"); *id.* ¶ 128 (in breach of implied warranty cause of action, alleging that "Plavix was unaccompanied by warnings of its dangerous propensities"); *id.* ¶ 133 (in breach of express warranty cause of action, alleging that "Plavix was unaccompanied by warnings of its dangerous propensities"); *id.* ¶ 141 (in deceit by concealment cause of action, alleging that Defendants had "unique knowledge and expertise regarding the defective nature of Plavix" but failed to disclose that Plavix® was not safe and effective); *id.* ¶¶ 153-55 (in negligent misrepresentation claim, alleging that Defendants disseminated false information in "the content of the labels (i.e., the product labeling) to physicians through publication of the drug's monograph in the PDR, and otherwise [by communicating] information regarding the drug through advertising, distribution of promotional materials, sales presentations by company sales representatives, group sales representatives, and sponsored publications and seminar speakers"); *id.* ¶ 161 (in fraud by concealment cause of action, alleging that Defendants "had the duty and obligation to disclose . . . the true facts concerning Plavix, that is, that Plavix was dangerous and defective" but concealed this information); *id.* ¶ 173(e) (in Violation of Cal. Bus. & Prof. Code § 17200 cause of action, alleging that Defendants engaged in unlawful

- 4 -

1   practice, including failing to "updat[e] labels and timely and properly implement[ ] label changes");

2   *id.* ¶ 181(e) (same under Violation of Cal. Bus. & Prof. Code § 17500 claim); *id.* ¶ 192(d) (same

3   under Violation of Cal. Civ. Code § 1750 claim).

4         14.     The Supreme Court's decision in *Mensing* clarified the preemption doctrine as it

5   relates to manufacturers of generic drugs. In *Mensing*, two plaintiffs brought product liability

6   actions against manufacturers of generic prescription drugs. *Id.* at 2573. The generic manufacturers

7   argued that, under federal drug regulations, they are "prevented [ ] from independently changing

8   their generic drugs' safety labels." *Id.* at 2577. Consequently, they argued, holding them liable

9   under state law for failure to "adequately and safely label their products," would directly conflict

10  with labeling requirements under federal law. *Id.* The Supreme Court agreed: Because generic

11  manufacturers could not possibly comply with both state and federal law, state failure-to-warn

12  claims against generic drug manufacturers must be preempted. *Id.* at 2577-78, 2581 ("If the

13  Manufacturers had independently changed their labels to satisfy their state-law duty [to attach a

14  safer label], they would have violated federal law.").

15        15.     The same impossibility preemption analysis articulated by the Supreme Court in

16  *Mensing* works to bar claims against pharmaceutical distributors, which stand even further removed

17  than generic manufacturers from the ability to change drug labeling and other warnings. The crux

18  of Plaintiffs' claims against McKesson is that, independent of BMS, McKesson should have

19  provided warnings not already included in the Plavix® product labeling. Had it done so, however,

20  McKesson would have been subject to potential civil and/or criminal penalties under federal law for

21  "misbranding." 21 U.S.C. §§ 333, 334. Thus, it would be impossible for McKesson to do what

22  Plaintiffs allege state law required without running afoul of federal law.

23        16.     The FDA has jurisdiction over distributors of prescription drugs, as well as over

24  manufacturers of those drugs. FDA regulations on misbranding prohibit any person, including a

25  pharmaceutical distributor, from issuing any warning that is not consistent with the drug's FDA-

26  approved labeling. 21 C.F.R. § 201.100(d)(1). Under the Food, Drug, and Cosmetic Act, 21 U.S.C.

27  §§ 301 *et seq.* ("FDCA"), when the FDA approves a drug for marketing, it also approves the drug's

28  labeling, including information about the drug's potential risks and benefits. 21 U.S.C. § 355(d).

All other materials disseminated about a drug's risks and benefits, including promotional materials and "Dear Doctor" letters, must be "consistent with and not contrary to . . . the approved or permitted labeling."[3] 21 C.F.R. § 201.100(d)(1); Br. for United States as Amicus Curiae Supp. Resp'ts at 4-5, *Mensing*, 131 S. Ct. 2567 (2011) (attached as Exhibit B); 73 Fed. Reg. 2848, 2850 n.3 (2008) ("Federal law governs not only what information must appear in labeling, but also what information may not appear."). If a distributor issued unapproved additional warnings about a drug that are inconsistent with the FDA-approved labeling, it would subject itself to possible civil and/or criminal penalties for misbranding.[4] 21 U.S.C. §§ 333, 334.

17.     Nor could McKesson change the approved product labeling. Only the party who submits the New Drug Application ("NDA") to obtain FDA approval to market a drug can seek to change the drug's labeling after initial approval.[5] 21 C.F.R. § 314.71(a) ("*Only the applicant* may

---

[3]      21 U.S.C. § 321(m) (labeling includes "all labels and other written, printed, or graphic matter"); 21 C.F.R. § 1.3 (same). Thus, the term "labeling" includes more than the printed package insert.

[4]      The FDCA and implementing regulations provide that a drug is misbranded if its labeling is "false and misleading in any particular." 21 U.S.C. § 352(a); *id.* § 321(n); *id.* § 331(a), (b), (k); 21 C.F.R. § 201.6(a). A statement about a drug's risks would be considered "false and misleading" if it has not been found by the FDA to be properly substantiated. 40 Fed. Reg. 28,584 (1975) ("In short, a drug is misbranded if its labeling makes claims that have not been properly substantiated."). By definition, therefore, an unapproved warning by a distributor that the FDA has not considered and found to substantiated and that is inconsistent with the approved drug labeling would constitute misbranding.

[5]      Major labeling changes require the FDA's prior approval through submission of a Prior Approval Supplement ("PAS"). 21 C.F.R. § 314.70(b). Certain other changes may be made without advanced FDA approval through the Changes Being Effected ("CBE") regulations. 21 C.F.R. § 314.70(c). The federal regulations make clear that only the NDA holder can apply for these supplemental changes. 21 C.F.R. § 314.70(a) (requiring "*the applicant*" and "*holder of an approved application*" to submit changes to the FDA); *id.* § 314.70(b)(3) ("*The applicant* must obtain approval of a supplement from FDA [for major changes under the PAS procedure]."); *id.* § 314.70(c)(6) ("*[T]he holder of an approved application* may commence distribution of the drug product involved upon receipt by the agency of the supplement for the change [under the CBE procedure].") (emphases added). *See Mensing*, 131 S. Ct. at 2575 ("The FDA denies that the [generic] Manufacturers could have used the CBE process to unilaterally strengthen their warning labels. . . . We defer to the FDA's interpretation of its CBE and generic labeling regulations.") (citations omitted); Ex. B, at 12 ("[Generic manufacturers] could not properly have invoked the CBE or PAS process."). *See also* 21 U.S.C. § 355(o)(4)(A) (FDA contacts the brand-name manufacturer to initiate safety changes in drug labeling).

submit a supplement to an application.") (emphasis added); *id.* § 314.70(a)(4) ("The *applicant* must promptly revise all promotional labeling and advertising to make it consistent with any labeling change implemented . . . .") (emphasis added). Here, McKesson is not the applicant for the Plavix® NDA[6] and, therefore, has no authority to seek any changes to the drug's labeling.[7]

18.     For this very reason -- *i.e.*, that a distributor is not the NDA holder -- the District of New Jersey found that failure-to-warn claims against a distributor of a brand-name prescription drug were preempted. In *In re Fosamax*, plaintiffs named distributors of Fosamax -- Watson Pharmaceuticals and Watson Laboratories -- as defendants in a product liability suit. *See In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL No. 2243 (JAP-LHG), 2012 WL 181411, at *1 (D.N.J. Jan 17, 2012). Attempting to circumvent *Mensing* by de-emphasizing Watson's role as a generic manufacturer, Plaintiffs also alleged that "Defendant Watson was what is known as an the authorized distributor of branded Fosamax." *Id.* Nevertheless, Watson argued, and the District of New Jersey agreed, that *Mensing* preemption should apply because, "[a]s a distributor of Fosamax, Watson has no power to change Fosamax labeling. That power lies with the applicant who filed the New Drug Application (NDA) seeking approval to market Fosamax." *Id.* at *3 (citations omitted). *See also Stevens v. Cmty. Health Care Inc.*, No. ESCV200702080, 2011 WL 6379298, at *1 (Mass. Super. Ct. Oct. 5, 2011) ("As a distributor, however, DAVA had no ability to change labeling or warnings and thus, like a generic manufacturer, DAVA cannot be subject to liability in connection with a state law claim premised on a 'failure to warn.'").

---

[6]     FDA, Drugs@FDA Glossary of Terms, http://www.fda.gov/Drugs/informationondrugs/ucm079436.htm (last visited March 29, 2013) ("Company: The company (also called applicant or sponsor) submits an application to FDA for approval to market a drug product in the United States.").

[7]     Moreover, McKesson is not required to exert pressure on the NDA holder or the FDA to make labeling changes. The Supreme Court in *Mensing* rejected the argument that preemption turns on whether a defendant who is not the NDA applicant asked the FDA to initiate any labeling changes. *Mensing*, 131 S. Ct. at 2579 ("The question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it. . . . We can often imagine that a third party or the Federal Government *might* do something that makes it lawful for a private party to accomplish under federal law what state law requires of it."); *id.* at 2580 ("To consider in our pre-emption analysis the contingencies inherent in these cases . . . would be inconsistent with the *non obstante* provision of the Supremacy Clause.").

1    19.    Likewise here, McKesson, who is alleged simply to be a distributor of Plavix®,

2    cannot be liable under the state law theories asserted in the Complaint. McKesson has no ability

3    lawfully to alter the Plavix® labeling, and to subject McKesson to liability here would conflict

4    directly with federal law governing prescription drug labeling. Such state claims are therefore

5    preempted, and Plaintiffs have not stated a viable claim against McKesson.[8]

6    20.    BMS recognizes that Judge Chen previously remanded eight other Plavix® actions

7    removed to this Court from San Francisco County Superior Court, but respectfully disagrees with

8    that decision and, therefore, is removing this case to preserve its position that the Court has subject-

9    matter jurisdiction. *Caouette v. Bristol-Myers Squibb Co.*, No. C-12-1814 EMC, 2012 WL 3283858

10   (N.D. Cal. Aug. 10, 2012). BMS respectfully believes removal is well founded on the merits for the

11   following reasons.

12   21.    The decision in *Caouette* did not actually address the argument that failure-to-warn

13   claims against a pharmaceutical distributor are preempted, deciding instead to rely on Plaintiffs'

14   design defect claims. *Caouette*, 2012 WL 3283858, at *3-4.[9] As to the design defect claims, we

15   respectfully submit that the decision also did not squarely address and decide whether the *Mensing*

16   rationale applies to preempt those claims against McKesson, an issue which must be decided here to

17   determine whether jurisdiction is proper. *Id.* at *5 & n.5. Instead of relying on the majority of

18   courts that have found the *Mensing* preemption rationale equally applicable to design defect

19   claims,[10] the Court in *Caouette* granted remand because of perceived uncertainty on this issue

---

8       Although some California federal courts have previously rejected arguments that
pharmaceutical distributors were fraudulently joined, these cases largely predate *Mensing* and/or did
not directly address whether *Mensing* barred failure-to-warn claims against McKesson. The
Supreme Court and the Ninth Circuit have not considered whether implied preemption bars product
liability claims against a distributor of prescription drugs in the fraudulent joinder context.

9       Indeed, Judge Chen recently requested supplemental briefing from plaintiffs in the related
cases now before him on the failure-to-warn preemption issue. *See* Order re: Supplemental
Briefing, *Kinney v. Bristol-Myers Squibb Co.*, No. C-12-4477 EMC (N.D. Cal. Feb. 19, 2013)
(noting that "Plaintiffs have yet to address the question (assuming the logic of *Mensing*'s
impossibility analysis applies here) why it is not impossible for a distributor to provide additional
warnings (as Plaintiffs contend is required by California law) and not contravene federal law")
(attached as Exhibit C).

10      *See, e.g., Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 186 (5th Cir. 2012) (confirming
that "with few exceptions, courts have held that state-law tort claims against generic drug

(Footnote Cont'd on Following Page)

1   created primarily by *Bartlett v. Mutual Pharmaceutical Co.*, 678 F.3d 30 (1st Cir. 2012). *Bartlett*,

2   however, is an outlier case in which the First Circuit conceded its rationale and holding were in

3   conflict with *Mensing*. *Caouette*, 2012 WL 3283858, at \*4. Moreover, the Supreme Court granted

4   certiorari in *Bartlett* to review the very same holding for which it was cited in *Caouette* and heard

5   oral argument in the case on March 19, 2013.[11] A decision is expected in June. If the Supreme

6   Court reverses *Bartlett*, and extends the holding in *Mensing* to design defect claims, it will also

7   undermine the rationale on which the decision in *Caouette* was based.

8       22.      ***Second,*** McKesson is also fraudulently joined because Plaintiffs make no *plausible*

9   *allegations* that McKesson actually distributed the Plavix® that Plaintiffs ingested.[12] Plaintiffs only

10

11   (Footnote Cont'd From Previous Page)
     manufacturers, including design defect claims, are preempted after *Mensing*") (citations omitted); *In*
12   *re Pamidronate Prods. Liab. Litig.*, 842 F. Supp. 2d 479, 484-85 (E.D.N.Y. 2012) (design defect,
     negligence and warranty claims against generic manufacturer were preempted); *Moore v. Mylan,*
13   *Inc.*, No. 1:11–CV–03037–MHS, 2012 WL 123986, at \*6-7 (N.D. Ga. Jan. 5, 2012) (design defect
     claim against generic manufacturer was preempted); *In re Reglan Litig.*, No. 289, slip op. at 8-9, 13
14   (N.J. Super. Ct. Law Div. May 4, 2012) (defective design, negligence, negligence per se, fraud,
15   misrepresentation and suppression, constructive fraud, breach of warranties, consumer fraud, and
     unjust enrichment claims against generic manufacturer were all essentially failure-to-warn claims
16   and therefore preempted); *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL
     No. 2243, No. Civ. 08-008 (GEB-LHG), 2011 WL 5903623, at \*6, 8, 9 (D.N.J. Nov. 21, 2011)
17   (design defect, negligence, breach of warranty, fraud, misrepresentation, failure to conform to
18   representation, negligent misrepresentation, and consumer fraud claims against generic
     manufacturers were all preempted).

19   [11]    The Supreme Court has framed the question presented as: "Whether the First Circuit erred
20   when it created a circuit split and held -- in clear conflict with this Court's decisions in *PLIVA, Inc.*
     *v. Mensing*, 131 S. Ct. 2567 (2011); *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008); and *Cipollone*
21   *v. Liggett Group, Inc.*, 505 U.S. 504 (1992) -- that federal law does not preempt state law design-
     defect claims targeting generic pharmaceutical products because the conceded conflict between
22   such claims and the federal laws governing generic pharmaceutical design allegedly can be avoided
     if the makers of generic pharmaceuticals simply stop making their products." *Mutual Pharm. Co. v.*
23   *Bartlett*, No. 12-142 (U.S. Nov. 30, 2012).

24   [12]    *See, e.g.*, *Beavers v. DePuy Orthopaedics, Inc.*, No. 1:11 DP 20275, 2012 WL 1945603, at
25   \*5 (N.D. Ohio May 30, 2012) (finding non-diverse defendant was fraudulently joined when the
     allegations in the complaint "[fell] well below the threshold required to meet the plausibility
26   standard required under *Twombly*"). While some courts in this District have held that *Twombly*
     does not apply in the fraudulent joinder context, *e.g.*, *Tofighbakhsh v. Wells Fargo & Co.*, No. 10–
27   830 SC, 2010 WL 2486412, at \*3 (N.D. Cal. June 16, 2010), the Ninth Circuit has never done so.
     In any event, Plaintiffs' allegations are insufficient under *both* federal *and* state pleading
28   requirements. *See infra* ¶ 24.

1    make the conclusory allegation that each "Plaintiff's Plavix was . . . distributed by McKesson."

2    *See, e.g.*, Ex. A, ¶ 11. But Plaintiffs do not identify when or from which pharmacy they allegedly

3    purchased Plavix®, or provide any other facts to show a plausible connection to McKesson.

4        23.      The fact that Plaintiffs uniformly allege that McKesson distributed Plavix® to *all* 51

5    Plaintiffs included in this action underscores the implausibility of their boilerplate allegation.

6    Plaintiffs are dispersed across 19 different states, and Plavix® is distributed nationwide by at least

7    twenty different distributors in addition to McKesson. Decl. of Todd May (Ex. D). It strains

8    credulity to believe that the Plavix® taken by *every one* of these Plaintiffs was distributed by

9    McKesson, and the Complaint provides no factual basis plausibly to conclude that any Plaintiff,

10    much less all of them, actually took pills distributed by McKesson.

11        24.      Although Plaintiffs do not have to "prove" every allegation in their Complaint, both

12    federal and state pleading standards require Plaintiffs to allege sufficient facts to state a claim

13    against McKesson. Cal. Code Civ. P. § 430.10 (party may file a demurrer to a complaint on the

14    grounds that it "does not state facts sufficient to constitute a cause of action"); *Bell Atlantic Corp. v.*

15    *Twombly*, 550 U.S. 544 (2007) (pleadings must have "enough heft to show that the pleader is

16    entitled to relief") (quotation omitted); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). At a bare minimum,

17    before filing their Complaint, Plaintiffs must investigate whether McKesson actually distributed the

18    Plavix® they used and plead key facts to support the allegations.[13] *See generally Aronis v. Merck &*

19    *Co.*, No. Civ. S-05-0486 WBS DAD, 2005 WL 5518485 (E.D. Cal. May 3, 2005). That Plaintiffs

20    have no factual basis to allege McKesson distributed the Plavix® taken by all of them is evident

21    from their failure even to identify the pharmacies where the Plaintiffs purchased Plavix® or dates

22    when they purchased the drug, which are facts squarely within their personal knowledge.[14]

23

24    [13]      Like Federal Rule 11, Section 128.7 of California's Code of Civil Procedure requires a

25    plaintiff to conduct a reasonable inquiry before filing suit to verify that there is factual support for
his/her allegations.

26    [14]      *See Lyons v. Am. Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 WL 809677, at *5 (S.D.
Ala. Sept. 30, 1997) ("If plaintiffs were unable at the time they formulated their complaint to set

27    forth any specific factual allegations against the distributor defendants upon which could be based
any claim of fraud or breach of warranty, there can be no better admission of fraudulent joinder of

28    these defendants.").

25.     Alternatively, if the Court is not convinced from the face of the Complaint that Plaintiffs fraudulently joined McKesson, Defendant BMS respectfully requests the opportunity to conduct limited jurisdictional discovery to determine whether Plaintiffs have any factual basis to allege McKesson actually distributed any of the Plavix® ingested by the Plaintiffs joined in this Complaint. *See Abrego v. Dow Chem.*, 443 F.3d 676, 691-92 (9th Cir. 2006) (explaining that district court is not required, but in its discretion may permit "jurisdictional discovery" in cases removed from state court).

26.     *Finally*, there is no strict liability claim against a *pharmaceutical* distributor who supplies but does not manufacture or design the drug. *See In re Rezulin Litig. (Skinner)*, No. CV 03-1643-R(RZX), 2003 WL 25598915, at *1 (C.D. Cal. Apr. 28, 2003) ("The Court further finds that there is no possibility that plaintiffs could prove a cause of action against McKesson, an entity which distributed this FDA-approved medication to pharmacists in California."). In California, pharmacists are not liable for supplying FDA-approved prescription drugs because doing so may cause some pharmacies to "restrict availability by refusing to dispense drugs which pose even a potentially remote risk of harm, although such medications may be essential to the health or even the survival of patients." *See Murphy v. E.R. Squibb & Sons, Inc.*, 710 P.2d 247, 40 Cal. 3d 672 (1985). The same rationale applies to a pharmaceutical distributor. If a distributor like McKesson were held strictly liable simply for distributing drugs manufactured by others, there would be a similar chilling effect limiting the availability of important prescription drugs.[15] Indeed, Defendant BMS has been unable to locate a single case -- in California or elsewhere -- finding a *pharmaceutical* distributor strictly liable for an alleged injury to a person taking a prescription drug.

---

[15]     Defendant recognizes that district courts in the Ninth Circuit have previously rejected the distributor-pharmacy analogy for fraudulent joinder purposes. *See, e.g., Black v. Merck & Co, Inc.*, No. CV 03-8730 NM(AJWx), 2004 WL 5392660, at *3-4 (C.D. Cal. Mar. 3, 2004). The Ninth Circuit, however, has not considered the issue and "California case law . . . has not addressed whether distributors of prescription drugs can be strictly liable for failure to warn." *Id.* Judge Chen did not address or rule on this ground for removal in his remand decision in *Caouette.*

ii.   **Fraudulent Misjoinder of the New York Plaintiffs**

27.    The vast majority of Plaintiffs are diverse from the only properly joined Defendant, BMS. Only three Plaintiffs are non-diverse, but they have been fraudulently misjoined so as to defeat diversity jurisdiction. *See In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 294 F. Supp. 2d. 667, 673 (E.D. Pa. 2003) ("[T]he same principles of fraudulent joinder apply where a plaintiff is improperly joined with another plaintiff so as to defeat diversity jurisdiction.") (citations omitted); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 146-48 (S.D.N.Y. 2001) ("[A]ccordingly, as the plaintiffs have been misjoined, and the misjoinder of plaintiff Dupree in particular destroys diversity, the court will sever her action for purposes of maintaining the defendants' right to removal of the remainder of the action."); *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL No. 2243 (JAP-LHG), No. 11-3045, 2012 WL 1118780, at *3 (D.N.J. Apr. 3, 2012).

28.    The fraudulent misjoinder doctrine permits the Court to ignore the citizenship of non-diverse plaintiffs who fail to "make[ ] out at least one claim that arises out of the same transaction or occurrence or series of transactions or occurrences as the other plaintiffs." *In re Rezulin Prods. Liab. Litig.*, MDL No. 1348, Nos. 00 Civ. 2843 (LAK), 01 Civ. 4010, 2002 WL 31496228, at *1 (S.D.N.Y. Nov. 7, 2002). This doctrine was first articulated by the Eleventh Circuit in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds, Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000). It has since been adopted by numerous other courts. *See also In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002); *In re Benjamin Moore & Co.*, 318 F.3d 626, 628 (5th Cir. 2002); *In re Prempro Prods. Liab. Litig.*, 417 F. Supp. 2d 1058 (E.D. Ark. 2006); *Smith v. Nationwide Mut. Ins. Co.*, 286 F. Supp. 2d 777, 781 (S.D. Miss. 2003); *Greene*, 344 F. Supp. 2d at 684-85; *Coleman v. Conseco, Inc.*, 238 F. Supp. 2d 804, 808 (S.D. Miss. 2002), *abrogated on other grounds, Sweeney v. Sherwin Williams Co.*, 304 F. Supp. 2d 868, 873 (S.D. Miss. 2004). Although Judge Chen rejected applying the fraudulent misjoinder doctrine in his August 10, 2012 remand order in *Caouette*, Defendant respectfully submits the Court conflated the fraudulent *misjoinder* doctrine (which asks whether the parties in question -- here, certain plaintiffs -- have been procedurally misjoined) with the doctrine of

fraudulent *joinder* (which asks whether the claim in question has merit). *Caouette*, 2012 WL 3283858, at *7.[16]

29.     In cases where plaintiffs allege injuries from ingesting pharmaceutical products, courts have found that plaintiffs were fraudulently joined who fail (like Plaintiffs here) to allege that they received the product from the same source, at the same point in time, for similar periods of time, and resulting in similar injuries. *In re Rezulin*, 2002 WL 31496228, at *1; *In re Diet Drugs*, 294 F. Supp. 2d at 679 (finding misjoinder and severing the claims where "plaintiffs reside[d] in various states throughout the country, and were prescribed different diet drugs by different doctors at different times"); *In re Baycol Prods. Litig.*, MDL No. 1431 (MJD), No. 03-2931, 2003 WL 22341303, at *4 (D. Minn. 2003) (severing the misjoined plaintiff after concluding that "these claims have been misjoined, and that such misjoinder should not defeat diversity jurisdiction"); *In re Diet Drugs Prods. Liab. Litig.*, No. Civ. A. 98-20478, 1999 WL 554584, at *3-4 (E.D. Pa. July 16, 1999) (dismissing non-diverse plaintiffs' claims and finding that plaintiffs who purchased pharmaceutical products from different sources were not properly joined); *In re Prempro*, 417 F. Supp. 2d at 1060 (finding fraudulent misjoinder when "[t]he only thing common among Plaintiffs is that they took an HRT drug-but not even the same HRT drug. Plaintiffs are residents of different states and were prescribed different HRT drugs from different doctors, for different lengths of time, in different amounts, and suffered different injuries").

30.     Plaintiffs' claims plainly do not arise out of the same "transaction or series of transactions" as required for proper joinder. *See* Fed. R. Civ. P. 20(a)(1) ("Persons may join in one action as plaintiffs if: (a) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;

---

[16]     Defendant recognizes that some other district courts in the Northern District of California have declined to adopt the fraudulent misjoinder doctrine. *See, e.g., Brazina v. Paul Revere Life Ins. Co.*, 271 F. Supp. 2d 1163, 1171-72 (N.D. Cal. 2003). Other district courts in the Ninth Circuit have adopted the theory, however, and the Ninth Circuit and the Supreme Court have not directly addressed the issue. Thus, the Court is not precluded from applying that doctrine here. Indeed, substantial precedent from other circuits, including that cited in the text, supports applying the theory. *See Sutton v. Davol, Inc.*, 251 F.R.D. 500, 503-05 (E.D. Cal. 2008) (finding fraudulent misjoinder of claims); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 684-85 (D. Nev. 2004) (adopting fraudulent misjoinder theory).

- 13 -

and (b) any question of law or fact common to all plaintiffs will arise in the action.").[17] *See Adams v. I-Flow Corp.*, No CV09-09550 R(SSx), 2010 WL 1339948, at *8 (C.D. Cal. Mar. 30, 2010) (finding the claims of 141 plaintiffs to be misjoined when they alleged injuries from "separate shoulder surgeries over the span of a ten (10) year period . . . performed in different hospitals located in thirty-seven (37) states and Canada"). Plaintiffs do not allege that they received Plavix® from the same prescribing physician, that they were prescribed Plavix® for a common condition, or that they all used Plavix® for similar amounts of time. They also do not allege that the same drug labeling -- the warnings -- were in effect during the periods of time each of them took the drug. They do not even allege the same type of Plavix®-related injuries.[18]

     31.    Plaintiffs' misjoinder of three non-diverse Plaintiffs frustrates both the underlying purpose of the joinder rules and Defendant's right to removal and, therefore, those Plaintiffs' claims should be severed and their citizenship ignored for purposes of establishing diversity jurisdiction over this case. *In re Rezulin Prods. Liab. Litig.*, 2002 WL 31496228, at *1 ("Joinder 'of several plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of the asserted claims.'") (citations omitted).

---

[17]    Federal and California joinder rules are substantially the same. Under both rules, joinder of plaintiffs in one action is appropriate only where the matters to be litigated arise from the "same transaction or series of transaction" *and* they involve "any common question of law or fact." Fed. R. Civ. P. 20(a)(1); Cal. Code Civ. Proc. § 378.

[18]    *See Alday v. Organon USA, Inc.*, Nos. 4:09CV1415 RWS, 4:08MD1964 RWS, 2009 WL 3531802, at *1-2 (E.D. Mo. Oct. 27, 2009) (severing and dismissing plaintiffs because "Plaintiffs' injuries did not arise out of the same transaction or occurrence. Each Plaintiff was injured at different times in different states allegedly from their use of NuvaRing that was presumably prescribed by different healthcare providers. Nor are Plaintiffs' injuries all the same"); *Boschert v. Pfizer, Inc.*, No. 4:08-CV-1714 CAS, 2009 WL 1383183, at * 3-4 (E.D. Mo. May 14, 2009); *Cumba v. Merck & Co.*, No. 08-CV-2328 (DMC), 2009 WL 1351462, at *1 (D.N.J. May 12, 2009) ("[I]n addition to being linked by the same drug and type of injury, plaintiffs must also demonstrate similarities with respect to, *inter alia,* the source of the drug, the length of the exposure to the drug, the type of exposure, the type of resulting injury, and the plaintiffs' physical state at the time of ingestion.") (citations omitted).

- 14 -

### iii. Amount-in-Controversy

32. The amount-in-controversy for diversity removal is satisfied. Although the Complaint seeks unspecified compensatory damages,[19] it is facially apparent from the Complaint that the amount-in-controversy between each Plaintiff and Defendant exceeds the sum or value of $75,000, exclusive of interest and costs. The Complaint includes thirteen causes of action, and alleges that Plaintiffs' use of Plavix® caused "severe physical, economic and emotional" injuries, including death. *See, e.g.,* Ex. A, ¶¶ 1, 11, 26. Plaintiffs seek recovery for compensatory damages, future medical and incidental expenses, past and future lost wages, future medical monitoring, punitive damages, disgorgement of profits, loss of consortium, and costs. Ex. A, at 37-39 (Prayer for Relief).

33. The allegations in the Complaint are substantially similar to other complaints filed in or removed to federal court and seeking more than $75,000 in damages. *See* Compl. ¶ 215, *Chesney v. Bristol-Myers Squibb Co.*, No. 1:11-cv-3246 (KAM-VVP) (E.D.N.Y. July 5, 2011) (Ex. E) (seeking at least $3 million in damages); First Am. Compl. ¶ 6, *LaBarre v. Bristol-Myers Squibb Co.*, No. 3:06-cv-06050 (FLW-TJB) (D.N.J. May 1, 2009) (Ex. F) (alleging federal jurisdiction "because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs"); First Am. Compl., *Mills v. Bristol-Myers Squibb Co.*, No. 2:11-cv-00968 (removed D. Ariz. May 16, 2011) (Ex. G).

34. On these facts, Defendant reasonably asserts that the amount-in-controversy for each Plaintiff's claim in these actions exceeds $75,000, exclusive of interest and costs. *See, e.g.,* *Kammerdiener v. Ford Motor Co.*, No. ED CV 09-2180 PSG (VBKx), 2010 WL 682297, at *2 (C.D. Cal. Feb. 24, 2010) (complaint seeking damages for wrongful death and personal injuries met amount-in-controversy); *Moore v. Goodyear Tire & Rubber Co.*, No. CV-11-01174-PHX-NVW, 2011 WL 3684508, at *3 (D. Ariz. Aug. 23, 2011) (amount-in-controversy met given that the case

---

[19] California Civil Procedure Code §§ 422.30 and 425.10(b) prohibit plaintiffs in personal injury or wrongful death actions from stating the amount of damages demanded, but require plaintiffs to only state whether the case is a "limited civil case" under $25,000. Plaintiffs here designated the case as "unlimited (amount demanded exceeds $25,000)" in the civil case cover sheet.

"involves the alleged wrongful deaths of three persons and serious injury to several others.  Such cases, if successful, are generally known to produce verdicts far in excess of $75,000").

## III.   PLAINTIFFS' CITIZENSHIP

35.   Plaintiff Dale Guinn is a citizen of the State of Indiana.  Ex. A, ¶ 11.

36.   Plaintiff Needham O. Bunn s a citizen of the State of North Carolina.  Id. ¶ 12. Plaintiff Nancy L. Bunn is the spouse of Needham O. Bunn and her citizenship is not stated in the Complaint.  Id. ¶ 13.

37.   Plaintiff Edwin D. West is a citizen of the State of Arkansas.  Id. ¶ 14.  Plaintiff Anne M. West is the spouse of Edwin D. West, and her citizenship is not stated in the Complaint. Id. ¶ 15.

38.   Plaintiff Bonita L. Erie is a citizen of the State of Minnesota.  Id. ¶ 16.

39.   Plaintiff Mary E. Salerno is a citizen of the State of Pennsylvania.  Id. ¶ 17.

40.   Plaintiff Ora Whiting is a citizen of the State of Pennsylvania.  Id. ¶ 18.

41.   Plaintiff Ray V. Bobo is a citizen of the State of Arkansas.  Id. ¶ 19.  Plaintiff Marilyn A. Bobo is the spouse of Ray V. Bobo, and her citizenship is not stated in the Complaint. Id. ¶ 20.

42.   Plaintiff Paula M. Collins is a citizen of the State of New Mexico.  Id. ¶ 21.

43.   Plaintiff Thomas H. Sanders is a citizen of the State of Georgia.  Id. ¶ 22.

44.   Plaintiff Bonnie R. O'Neal is a citizen of the State of Illinois.  Id. ¶ 23.  Plaintiff Maurice Miller is the spouse of Bonnie R. O'Neal, and his citizenship is not stated in the Complaint.  Id. ¶ 24.

45.   Plaintiff Lois A. Andrews is a citizen of the State of Pennsylvania.  Id. ¶ 25.

46.   Plaintiff Melissa Neal, as successor-in-interest on behalf of the Estate of Katie M. Robinson, is a citizen of the State of Mississippi.  Id. ¶¶ 26-27.

47.   Plaintiff Calvin Hargrove is a citizen of the State of North Carolina.  Id. ¶ 28.

48.   Plaintiff Doris Olson, as successor-in-interest on behalf of the Estate of Richard O. Olson, is a citizen of the State of Illinois.  Id. ¶¶ 29-30.

1       49.    Plaintiff Gerald Aranaydo is a citizen of the State of Hawaii. *Id.* ¶ 31. Plaintiff

2  Lorraine Aranaydo is the spouse of Gerald Aranaydo, and her citizenship is not stated in the

3  Complaint. *Id.* ¶ 32.

4       50.    Plaintiff Thomas Murphy is a citizen of the State of Pennsylvania. *Id.* ¶ 33. Plaintiff

5  Liz Murphy is the spouse of Thomas Murphy, and her citizenship is not stated in the Complaint. *Id.*

6  ¶ 34.

7       51.    Plaintiff Robert E. Mills is a citizen of the State of Michigan. *Id.* ¶ 35. Plaintiff

8  Donna Roach is the spouse of Robert E. Mills, and her citizenship is not stated in the Complaint.

9  *Id.* ¶ 36.

10      52.    Plaintiff Jose V. Vigil is a citizen of the State of New Mexico. *Id.* ¶ 37. Plaintiff

11  Helen Vigil is the spouse of Jose V. Vigil, and her citizenship is not stated in the Complaint. *Id.* ¶

12  38.

13      53.    Plaintiff Jimmie Wright is a citizen of the State of Illinois. *Id.* ¶ 39.

14      54.    Plaintiff Larry J. McCauley is a citizen of the State of Utah. *Id.* ¶ 40. Plaintiff

15  Pamela McCauley is the spouse of Larry J. McCauley, and her citizenship is not stated in the

16  Complaint. *Id.* ¶ 41.

17      55.    Plaintiff Randy L. Fox is a citizen of the State of North Carolina. *Id.* ¶ 42.

18      56.    Plaintiff Lillian M. Anderson, as successor-in-interest on behalf of the Estate of

19  Truman L. Anderson, is a citizen of the State of New York. *Id.* ¶¶ 43-44.

20      57.    Plaintiff Audrey C. Matthew is a citizen of the State of North Carolina. *Id.* ¶ 45.

21      58.    Plaintiff Robert A. Grainger is a citizen of the State of South Carolina. *Id.* ¶ 46.

22  Plaintiff Wendy S. Grainger is the spouse of Robert A. Grainger, and her citizenship is not stated in

23  the Complaint. *Id.* ¶ 47.

24      59.    Plaintiff Charlie S. Overby is a citizen of the State of Virginia. *Id.* ¶ 48.

25      60.    Plaintiff Robert L. Biggiam is a citizen of the State of Illinois. *Id.* ¶ 49.

26      61.    Plaintiff Foy C. Hinton is a citizen of the State of Colorado. *Id.* ¶ 50. Plaintiff Debra

27  Hinton is the spouse of Foy C. Hinton, and her citizenship is not stated in the Complaint. *Id.* ¶ 51.

28

- 17 -

62. Plaintiff Edmund J. Prisby is a citizen of the State of Illinois. *Id.* ¶ 46. Plaintiff Sandra Prisby is the spouse of Edmund J. Prisby, and her citizenship is not stated in the Complaint. *Id.* ¶ 53.

63. Plaintiff Daniel E. Noble is a citizen of the State of Wisconsin. *Id.* ¶ 54. Plaintiff Judith C. Noble is the spouse of Noble, and her citizenship is not stated in the Complaint. *Id.* ¶ 55.

64. Plaintiff Alfred T. Boutwell is a citizen of the State of Mississippi. *Id.* ¶ 56. Plaintiff Audrey G. Boutwell is the spouse of Alfred T. Boutwell, and her citizenship is not stated in the Complaint. *Id.* ¶ 57.

65. Plaintiff Kathy Strausser, as successor-in-interest on behalf of the Estate of Alice Morgan, is a citizen of the State of Pennsylvania. *Id.* ¶¶ 58-59.

66. Plaintiff Patricia Riccardi is a citizen of the State of New York. *Id.* ¶ 60. Plaintiff Anthony M. Riccardi is the spouse of Patricia Riccardi, and his citizenship is not stated in the Complaint. *Id.* ¶ 61.

67. Plaintiff Lewis S. Boyce is a citizen of the State of Connecticut. *Id.* ¶ 62. Plaintiff Florence Boyce is the spouse of Lewis S. Boyce, and her citizenship is not stated in the Complaint. *Id.* ¶ 63.

68. Plaintiff Edna L. Burge is a citizen of the State of Ohio. *Id.* ¶ 64.

69. Plaintiff Bernice L. Armstead is a citizen of the State of Illinois. *Id.* ¶ 65.

## IV. PROCEDURAL REQUIREMENTS OF REMOVAL ARE SATISFIED

70. This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b). Defendant BMS has received a copy of, but has not yet been served with, the Complaint. Moreover, the Complaint was filed on March 29, 2013, which is less than 30 days prior to the date of this Notice.

71. The Northern District of California is the federal judicial district encompassing the Superior Court of the State of California, County of San Francisco, where this suit was originally filed. Venue is therefore proper in this district under 28 U.S.C. § 1441(a).

72. Jurisdiction pursuant to 28 U.S.C. § 1332 requires consent of all Defendants. Defendant McKesson is fraudulently joined and therefore is not required to join in the removal. *United Computer Sys. Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002). The nominal

defendants and unidentified defendants Does 1-100 are not required to consent to removal. *See*

*Hafiz v. Greenpoint Mortg. Funding*, 409 F. App'x 70, 72 (9th Cir. 2010) (nominal parties are not

required to consent to removal).

73.     Defendant BMS is providing Plaintiffs with written notice of the filing of this Notice

of Removal as required by 28 U.S.C. § 1446(d).

74.     Pursuant to 28 U.S.C. § 1446(d), Defendant BMS is filing a copy of this Notice of

Removal with the Clerk of the Superior Court of the State of California, County of San Francisco.

75.     Defendant BMS hereby demands a trial by jury on all issues and all counts of the

Complaint.


WHEREFORE, Defendant hereby gives notice that the above entitled state court action,

formerly pending in the Superior Court of the State of California, County of San Francisco be

removed to the United States District Court for the Northern District of California.


By: _____

Maurice A. Leiter
Michael J. Baker
Sharon D. Mayo
Jeremy M. McLaughlin

*Attorneys for Bristol-Myers Squibb Company*


Dated: April 3, 2013

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2013, a true and correct copy of the foregoing has been sent to all counsel and parties listed below via U.S. Mail.

> Hunter J. Shkolnik
> Marissa Langhoff
> NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES LLP
> 111 Corporate Drive, Suite 225
> Ladera Ranch, CA 92694
>
> *Attorneys for Plaintiffs*
>
> McKesson Corporation
> The Prentice Hall Corporation Systems, Inc.
> 2730 Gateway Oaks Dr., Suite 100
> Sacramento, CA 95833
>
> *Defendant*

Chris Roberts

- 20 -